1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2                     HARRISBURG DIVISION

 3
    UNITED STATES OF AMERICA        :   CASE NO.
 4                                  :
            v.                      :
 5                                  :
                                    :
 6  RILEY JUNE WILLIAMS            :   1:21-MJ-0007

 7

 8                  TRANSCRIPT OF PROCEEDINGS
            PRELIMINARY HEARING/DETENTION HEARING
 9

10        Held before MAGISTRATE JUDGE MARTIN C. CARLSON
            January 21, 2021, commencing at 9:18 a.m.
11     Courtroom No. 5, Federal Building, Harrisburg, Pennsylvania

12

13
    APPEARANCES:
14
    CHRISTIAN T. HAUGSBY, ESQUIRE
15  United States Attorney's Office
    228 Walnut Street, Suite 220
16  Harrisburg, PA  17108
         For the United States
17
    LORI J. ULRICH, ESQUIRE
18  Federal Public Defender's Office
    100 Chestnut Street, Suite 306
19  Harrisburg, PA  17101-2540
         For the Defendant
20

21

22
         Proceedings recorded by machine shorthand; transcript
23  produced by computer-aided transcription.
```

24  _____
                  Wendy C. Yinger, RMR, CRR
                    Official Court Reporter
25              wendy_yinger@pamd.uscourts.gov
                        717-440-1535

2

1          THE COURT:  Good morning.  This is the continuation

2   of proceedings in the case of United States of America versus

3   Riley Williams.  It is this court's criminal number 21-MJ-7.

4   As the parties may recall, I saw Ms. Williams on Tuesday,

5   conducted some initial proceedings in this case, and then

6   continued this matter over to today because the United States

7   had notified us on Tuesday that the federal authorities in the

8   District of Columbia were contemplating the filing of an

9   amended complaint in this matter.

10          And I understand that that has occurred and that we

11  now have an amended complaint pending against you, Ms.

12  Williams.  And I want to address that amended complaint and

13  matters relating to the release of the Defendant momentarily.

14  But as a prefatory matter as we begin this proceeding, a couple

15  of notes.

16          First, these proceedings are being live streamed for

17  a broader national audience that may have an interest in the

18  matters that transpire here today.  That being the case, I'm

19  obliged to note for everyone that Local Rule 83.1.1 strictly

20  forbids the recording of court proceedings such as this matter.

21  Therefore, I notify all participants and all observers of this

22  proceeding of the local rule and advise you all that we expect

23  compliance with that local rule.

24          Having noted that, let us turn then, if we may, to

25  the matter before us here today, which is the amended complaint

3

1  that has been filed in this matter and then the question of

2  bail or release or detention in this case.  Ms. Ulrich, does

3  the Defendant have a copy of the amended complaint filed in the

4  District of Columbia?

5           MS. ULRICH:  Yes, Your Honor.

6           THE COURT:  And have you had an opportunity to review

7  that complaint with Ms. Williams?

8           MS. ULRICH:  We have, Your Honor.

9           THE COURT:  Very well.  Ms. Williams, is it necessary

10  for Ms. Ulrich to read the amended complaint aloud?

11           THE DEFENDANT:  No.

12           THE COURT:  Very well.  Although you've waived the

13  reading of the amended complaint aloud, let me review with you

14  the charges set forth in that amended complaint and the

15  penalties for those offenses.  The amended complaint now

16  charges you with two felony offenses as well as two misdemeanor

17  offenses under the Criminal Code of the United States.

18           First, the amended complaint now charges you with a

19  violation of Title 18 of the U.S. Code, Section 1512(c)(2),

20  which makes it a crime to obstruct official proceedings,

21  including the proceedings of the United States Congress, which

22  would include certification of the electoral college vote.  In

23  the event of a conviction on this offense, the maximum penalty

24  would be up to 20 years imprisonment, fines of up to 250,000

25  dollars, a three-year term of supervised release that would

4

1 follow any jail sentence, and an assessment of 100 dollars.

2 The criminal complaint also charges you with aiding

3 and abetting in the theft of U.S. Government property; that is,

4 a violation of Title 18 of the U.S. Code, Section 641. And

5 given the allegations in the complaint, it appears that the

6 property allegedly purloined had a value in excess of a hundred

7 dollars, which would make this a felony offense, punishable by

8 up to 10 years imprisonment, fines of up to 250,000 dollars, a

9 three-year term of supervised release, and an assessment of 100

10 dollars.

11 The complaint also goes on to repeat charges that

12 were lodged against you in the initial complaint; that is,

13 violation of Title 18 of the U.S. Code, Section 1752, which

14 makes it an offense to knowingly enter or remain in restricted

15 buildings or grounds without lawful authority. As I mentioned

16 to you on Tuesday, that offense is a misdemeanor punishable by

17 up to one year imprisonment, fines of up to 100,000 dollars, a

18 one-year term of supervised release, and an assessment of 25

19 dollars.

20 Finally, the criminal complaint repeats the charge of

21 violent entry and disorderly conduct on Capitol grounds, a

22 violation of Title 40 of the U.S. Code, Section 5104. And as I

23 have noted for you on that score, the penalty is up to six

24 months imprisonment, and fines of up to 5000 dollars, as well

25 as an assessment of 10 dollars.

5

1          So do you understand that these are now currently the

2    charges lodged against you?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And I appreciate you speaking aloud and

5    speaking into the microphone.  And for the purposes of these

6    proceedings, I would ask all counsel, all parties, to remain

7    seated and to speak directly into the microphone as needed.

8          Now in connection with these charges, as I did on

9    Tuesday, I want to begin by going back to the constitution and

10   reminding you of your constitutional rights.  Do you understand

11   that you have a constitutional right to the assistance of

12   counsel at all stages of these proceedings; and towards that

13   end, we have appointed Ms. Ulrich to represent you at no cost

14   to yourself in this district.  Do you understand that you have

15   this right?

16         THE DEFENDANT:  I do.

17         THE COURT:  Do you also understand that you have a

18   constitutional right under the fifth amendment to remain

19   silent?  You are not required to make a statement regarding

20   these matters.  If you decide to speak to the authorities, you

21   can stop speaking at any time, and your silence can never be

22   held against you.  Do you understand that?

23         THE DEFENDANT:  Yes, I do.

24         THE COURT:  Do you also understand though, Ms.

25   Williams, that if you make a statement, what you say can and

6

1   may be used against you?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Finally, do you understand that under

4   Federal Rule of Criminal Procedure 20, you would have the right

5   to plead guilty to these charges in this district, but only if

6   federal authorities here and in the District of Columbia both

7   agreed that a guilty plea here would be appropriate.  And in

8   any instance where it is your intention to contest these

9   charges, that must be done in the District of Columbia.  Do you

10  understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Very well.  Having then addressed these

13  preliminary matters relating to the amended complaint in this

14  case, let us turn to what had been originally scheduled, which

15  was the issue of a preliminary hearing and a bail or detention

16  hearing in this matter.  Do I understand that counsel have

17  reached a proposal that they would like to present to the

18  Court?

19          MR. HAUGSBY:  That's correct, Your Honor.

20          THE COURT:  And could you, Mr. Haugsby, outline the

21  nature of that proposal?

22          MR. HAUGSBY:  Yes, Your Honor.  As the parties spoke

23  with you about last evening, the parties have reached an

24  agreement regarding the disposition of both the preliminary

25  hearing in this district and the question of pretrial release.

7

1  That agreement, in sum, involves the Defendant waiving her

2  preliminary hearing rights in this district, being released on

3  conditions of pretrial supervision, conditions that are

4  identified in the pretrial services report, as well as any

5  other conditions this Court may impose.

6        In addition, the parties have agreed that the

7  Defendant would be placed on home confinement, that she would

8  have an ankle monitor placed on her, with the fees for that

9  monitor waived, the appointment of the Defendant's mother as a

10 third party custodian, the strict limitation on travel for the

11 Defendant within the Middle District of Pennsylvania and the

12 District of Maryland and the District of Columbia for matters

13 relating only to her ongoing criminal proceedings in that

14 district, and to arrange with the district court in the

15 District of Columbia to appear for an initial hearing on her

16 charges next week.

17        THE COURT:  Ms. Ulrich, is that your understanding of

18 the proposal that the United States and the defense wish to

19 have the Court consider?

20        MS. ULRICH:  It is, Your Honor.  But before I waive

21 probable cause, I wanted to make a comment before we waive

22 probable cause on the preliminary hearing.  And this is what I

23 want to say about us waiving the hearing.  It is regrettable

24 that Ms. Williams took the President's bait and went inside the

25 Capitol.  However, based on our initial investigation in

8

1    preparation for today, it is our position that the allegations

2    surrounding the theft of Speaker Pelosi's computer came in part

3    from a former abusive boyfriend, witness one, who is in the

4    affidavit of probable cause.

5              He has threatened Ms. Williams in a number of ways,

6    including if she filed a restraining order against him, he was

7    going to go after her.  His accusations are overstated.

8    However, because witness one stalked and harassed Ms. Williams,

9    she had to change her phone number and do a number of things.

10   And, of course, the affidavit of probable cause makes it appear

11   as though she was somehow fleeing authorities because of these

12   allegations.

13             But it was not, in fact, her intention to flee

14   authorities.  It was, in fact, to protect herself from an

15   abusive boyfriend, also known as witness one in the probable

16   cause affidavit.  And after interviewing some witnesses,

17   including the police officer, he is actually the one that told

18   her to change her phone number.  So while the affidavit might

19   make it appear as though that was somehow an attempt to flee

20   from authorities, it was, in fact, at the request of a police

21   officer who investigated these allegations of stalking and

22   harassment by witness one, and to protect, suggested she change

23   her phone number and do some other things.

24             MR. HAUGSBY:  Your Honor, I'm going to --

25             MS. ULRICH:  But having said that --

9

1          THE COURT:  Please have a seat, Mr. Haugsby.  Go

2     ahead, you were lodging some objection to this matter.

3          MR. HAUGSBY:  Just briefly.  And I don't mean to

4     interrupt the flow of counsel's presentation.  I'm having a

5     little bit of a difficulty understanding the purpose of this

6     presentation to this Court, respectfully, if the Defendant is,

7     in fact, waiving her rights to a preliminary hearing in this

8     district.  These matters seem more suited to be addressed by

9     the district court in the District of Columbia so that they may

10    be responded to as necessary.

11         MS. ULRICH:  And I'm summing it up, Your Honor.

12    Obviously, she's been vilified by the Government and the public

13    in this matter.  And having said that, we are not contesting

14    probable cause for purposes of today's hearing.

15         THE COURT:  And let me ask Ms. Williams that because

16    I've heard from counsel now.  Ms. Williams, you have a right to

17    have a contested hearing on probable cause.  Are you waiving

18    and giving up that right here today?

19         THE DEFENDANT:  I'm not contesting probable cause.

20         THE COURT:  Very well.  And are you not contesting

21    probable cause today as to each and every one of the charges

22    that I have reviewed with you?

23         THE DEFENDANT:  That's correct.

24         THE COURT:  So as to the charge of obstructing

25    congressional proceedings, you are not contesting probable

1  cause; is that correct?

2          THE DEFENDANT:  That's correct.

3          THE COURT:  Or theft of Government property, you are

4  not contesting probable cause here today?

5          THE DEFENDANT:  That's correct.

6          THE COURT:  And as to the charge of unlawful entry

7  onto restricted building, you are not contesting probable cause

8  today?

9          THE DEFENDANT:  I'm not contesting probable cause.

10          THE COURT:  Nor are you contesting probable cause as

11  to the charge of violent entry or disorderly conduct, is that

12  correct?

13          THE DEFENDANT:  That's correct.

14          THE COURT:  Then it does seem to me that with the

15  coda that Ms. Ulrich provides us, this aspect of these

16  proceedings draws to a close.  And further issues relating to

17  whether the charges as to which probable cause is not contested

18  today may be sustained on another day in another court at

19  another time will be determined down the road.  Having said

20  that now, is there anything further in terms of the issue of

21  preliminary hearing and probable cause?

22          MR. HAUGSBY:  Not from the Government, Your Honor.

23          MS. ULRICH:  Not from us.  Thank you, Your Honor.

24          THE COURT:  Very well.  Then let me turn to the

25  proposal that the Defendant be released on conditions of

1  release.  And in that regard, there's been a proposal that the

2  Defendant be released to a third party custodian, her mother.

3  I've received information relating to the background of the

4  Defendant's third party custodian, Mrs. Williams.

5          And let me ask, in light of the information that I've

6  been provided, which I trust has been shared with counsel, is

7  there any necessity from the point of view of either counsel

8  for Mrs. Williams to be sworn and to testify?

9          MR. HAUGSBY:  Will the Court be addressing Ms.

10  Williams here in court?

11          THE COURT:  I'll be addressing her briefly here in

12  court.

13          MR. HAUGSBY:  To the extent that the Court is going

14  to address the third party, then I don't believe there's any

15  need to call her as a witness.

16          MS. ULRICH:  If the Court is going to address her, I

17  would ask that she be called as a witness, if the Court's

18  intention is to ask her questions.

19          THE COURT:  Certainly.  Then why don't you come

20  forward, Mrs. Williams.  I have just a few questions that I

21  need to pose to you.

22          **WENDY WILLIAMS, THIRD PARTY CUSTODIAN, SWORN**

23          COURTROOM DEPUTY:  Please state your full name for

24  the record, and please spell your last name.

25          THE WITNESS:  Wendy Williams.  W-I-L-L-I-A-M-S.

1        **EXAMINATION**

2    BY THE COURT:

3    Q.   Good morning, Ms. Williams.

4    A.   Good morning.

5    Q.   How are you doing today?

6    A.   I'm okay.

7    Q.   Ms. Williams, I regret that these are the circumstances

8    that cause us to meet today, and I appreciate how difficult

9    this proceeding must be for you.  But I did want to ask you a

10   few questions, and then counsel may have a question or two

11   based upon the questions I pose to you.  The parties are

12   recommending that I release the Defendant to your custody as a

13   third party custodian.  Do you understand that?

14   A.   Yes.

15   Q.   And have counsel discussed with you what your role would

16   be as a third party custodian?

17   A.   Yes, they have.

18   Q.   As a third party custodian, you would be obliged to make

19   sure that the Defendant complied with every condition of

20   release that I set.  Do you understand that?

21   A.   Yes.

22   Q.   And you'd be obliged to make every effort to insure that

23   she appeared in court as required.  Do you understand that?

24   A.   Yes.

25   Q.   And in the event of a conviction and the imposition of a

13

1   sentence, it would be your duty to insure that she appeared as
2   required to surrender for service of any sentence, should that
3   take place.  Do you understand that?
4   A.   Yes.
5   Q.   You'll also have another duty.  As a third party
6   custodian, you will be an agent of this Court.  And should
7   there be a violation of bail conditions, you would be obliged
8   to report that to the Court.  Do you understand that?
9   A.   Yes, I do.
10  Q.   And, ma'am, you'd be obliged to do that even if the
11  violation could result in the revocation of the Defendant's,
12  your daughter's, release.  Do you understand that?
13  A.   Yes.
14  Q.   Furthermore, ma'am, you'll be required to sign an order
15  stating that you will fulfill these duties.  Do you understand
16  that?
17  A.   Yes.
18  Q.   And if you failed knowingly to fulfill the
19  responsibilities under the order, you could be cited for
20  contempt of court.  Do you understand that?
21  A.   Yes.
22  Q.   Knowing all of that, are you here today standing willing
23  to serve as a third party custodian?
24  A.   Yes, I am.
25  Q.   And I'll note for you, ma'am, that it would not be my

14

1  intention to have you alone undertaking that responsibility.

2  It would be my intention to also direct supervision by the

3  pretrial services office of the Court.  So you would not be

4  solely responsible for the obligations I've described here

5  today, but rather would work along with our pretrial services

6  office to insure the appearance of the Defendant and the safety

7  of the community.  Do you understand that?

8  A.   Yes.

9          THE COURT:  Do counsel have any questions in light of

10  my questions?

11          MS. ULRICH:  I do not, Your Honor.

12          MR. HAUGSBY:  Not in light of the Court's

13  questioning.  Thank you.

14          THE COURT:  Thank you, ma'am.  You may step back.

15          (Complied.)

16          THE COURT:  I am satisfied that Mrs. Williams would

17  be an appropriate third party custodian in this case.  And I

18  want to commend counsel for their efforts in identifying

19  conditions of release that may apply in this case.  From the

20  perspective of the Government, I think that the willingness of

21  the United States to entertain conditions of release speak to

22  some of the highest traditions of the law.  They speak to an

23  understanding that the role of the prosecutor is to seek

24  justice and not vengeance or retribution.

25          The role of defense counsel in endeavoring to secure

1 such conditions of release also speak to a high constitutional

2 obligation, the obligation that counsel have under the sixth

3 amendment to provide a vigorous defense.

4          In considering setting conditions of release in this

5 matter, I also have taken into account the fact that the eighth

6 amendment to the U.S. Constitution -- and it is the

7 constitution that guides us in these proceedings --

8 contemplates bail and release for those accused of crimes, but

9 who are cloaked in a presumption of innocence.

10          The Bail Reform Act, which guides us in these

11 decisions, also contemplates the release of Defendants often on

12 conditions of release.  And I take it, Mr. Haugsby, from the

13 proposal that you have described to me here today, it is the

14 desire of the federal authorities, including the U.S.

15 Attorney's office in the District of Columbia, to withdraw the

16 motion seeking pretrial detention.  Is that correct?

17          MR. HAUGSBY:  Yes, under the agreement and the

18 conditions that we've agreed to.

19          THE COURT:  And in assessing the joint request of the

20 parties, beyond taking into account the suitability of the

21 third party custodian, and the factors grounded in our

22 constitution in laws which call for bail when bail is

23 appropriate, I've also taken into account the circumstances of

24 this Defendant and the information in the pretrial services

25 report, which also recommends the release of the Defendant on

16

1   conditions.

2          The gravity of these offenses is great and cannot be

3   overstated, but the Defendant comes before me as a 22-year-old

4   individual without any prior criminal record, factors that

5   auger in favor of her release on conditions.  And upon a

6   careful review of the pretrial services report, and a full

7   consideration of the recommendations made by the parties, and

8   in accordance with the constitution and the laws of the United

9   States, I am going to set conditions of release for you, Ms.

10  Williams.

11         I'm going to ask you and your mother to pay close

12  attention because it will be your obligation, Ms. Williams, to

13  comply with these conditions.  And Mrs. Williams, it will be

14  your duty to insure the Defendant's compliance.  While on

15  release, Ms. Williams, you must not violate any federal, state,

16  or local law.

17         You must cooperate in the collection of a DNA sample,

18  if required to do so by law.  You must advise the Court and

19  pretrial services in writing before you change residence or

20  telephone number.  You must appear in court as required and, if

21  convicted, must surrender as directed to serve any sentence the

22  Court may impose.

23         I'm also going to direct that you appear virtually as

24  instructed for further proceedings in the District of Columbia

25  on January 25, 2021, at 1 p.m.  Mr. Haugsby, I'll ask for your

1  assistance and your good office's in providing Ms. Ulrich with

2  the information that she may need to insure that that condition

3  is satisfied.

4          It will also be a condition of your release, Ms.

5  Williams, that you be placed in the custody of your mother,

6  Wendy Williams, who has agreed to serve as a third party

7  custodian in this matter, who will use every effort to

8  supervise you to insure your appearance, and who has pledged to

9  notify this Court immediately if you violate any condition of

10  release.

11         I am also going to direct that you be supervised by

12  the pretrial services office of this Court in the manner that

13  it deems appropriate.  And while on release, you are to

14  continue or actively seek employment.  You are also to

15  surrender any passport you might possess to the Clerk of the

16  U.S. District Court.  Do you possess a passport, ma'am?

17         THE DEFENDANT:  No.

18         THE COURT:  And I'm not doubting that at all, but if

19  when you get home, you and your mom find a passport, it must be

20  immediately surrendered.  Is that understood?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And while these charges are pending, you

23  are not to obtain a passport or another international travel

24  document.  I am going to restrict your travel to the Middle

25  District of Pennsylvania, and for court appearances only, you

1   may travel through Maryland to the District of Columbia.

2              You are also to avoid all contact, direct or

3   indirect, with any person who may be a victim or witness in

4   this investigation or prosecution.  And while these charges are

5   pending, you are not to possess a firearm, destructive device,

6   or other dangerous weapon.

7              Mrs. Williams, are there any firearms in the home?

8              THE DEFENDANT:  No.

9              THE COURT:  And I'm sorry, I appreciate your answer,

10  I was actually asking your mom.

11             MRS. WILLIAMS:  There is not.

12             THE COURT:  Very well.  Thank you, Mrs. Williams.

13  You are to refrain from the excessive use of alcohol while

14  these charges are pending.  You are not to possess or use any

15  narcotic controlled substance while these charges are pending.

16  And you'll submit to drug testing to insure compliance with

17  this condition of release and, if necessary, participate in a

18  program of inpatient or outpatient drug abuse therapy and

19  counseling if directed to do so.

20             These are extraordinarily and stressful events, and

21  so I'm also going to direct that you receive medical or mental

22  health care as directed by pretrial services to address what is

23  doubtless a stressful event.  Furthermore, I am going to order

24  that you be placed on home detention.  This means that you'll

25  be restricted to your mother's residence at all times except

1  for employment, education, religious services, medical,

2  substance abuse or mental health treatment, attorney's visits,

3  court appearances, court-ordered obligations, or other

4  activities approved in advance by pretrial services.

5          And I'm going to order that you submit to location

6  monitoring as part of that home detention.  That location

7  monitoring will be conducted electronically, supervised by the

8  pretrial services office.  I will forego the assessment of any

9  fees against the Defendant for the electronic monitoring.

10         In addition, Ms. Williams, it will be a condition of

11 your release that you report as soon as possible to the

12 pretrial services office every contact with law enforcement,

13 including arrests, questioning, or even traffic stops.  These

14 are the conditions of release that I propose to impose in this

15 case.

16         Are there any questions or concerns on the part of

17 the United States regarding the conditions of release?

18         MR. HAUGSBY:  No concerns, Judge, just a point of

19 clarification.  With respect to condition number three, I

20 believe you advised the Defendant to notify probation regarding

21 any change in residence or change in her telephone number.  I

22 assume that would also include any additional numbers that the

23 Defendant may obtain in addition to what probation is aware of

24 now.

25         THE COURT:  I would regard the acquisition of

20

1  additional numbers or additional addresses as a change.

2  Wouldn't you agree, Ms. Ulrich, that the acquisition of

3  additional numbers would be a change?

4          MS. ULRICH:  Yes, that's a change.

5          THE COURT:  And Ms. Williams, do you understand that

6  if you were to acquire additional numbers, that would be a

7  change and that would have to be reported in advance?  Is that

8  clear?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Thank you, Mr. Haugsby.  Were there any

11  other matters that were of concern to you?

12          MR. HAUGSBY:  No, Your Honor.  Thank you.

13          THE COURT:  Thank you.  Ms. Ulrich, any concerns on

14  behalf of the defense regarding the conditions of release that

15  I propose to impose in this case?

16          MS. ULRICH:  Just one, Your Honor.  You ordered no

17  contact with any victim or witness in the case.  And I brought

18  this up in other matters.  There's lots of witnesses, lots of

19  victims in this case.  She may inadvertently talk to somebody.

20  So I would just ask the Court at add, any known victims or

21  witnesses to her.  Otherwise, it's a very vague and ambiguous

22  condition imposed, almost, you know --

23          THE COURT:  Well, what I would note is this, Ms.

24  Ulrich.  Your remarks earlier today suggested that you and your

25  client have a very clear idea of who may be potential witnesses

21

1  in this matter, and so your client should refrain from having

2  any contact with any such known person.  To the extent that

3  there are ambiguities in the order, what I would propose to do

4  is direct that defense counsel be in touch with the United

5  States to see if they can provide further clarity.

6          But certainly Ms. Williams, through the

7  representations you have made on her behalf, has a very clear

8  idea of some of the people that I am forbidding her from having

9  contact with.

10          MS. ULRICH:  She has a restraining order against --

11          THE COURT:  I understand.  I also understand that

12  notwithstanding such orders, sometimes people engage in

13  contacts that are now forbidden.

14          MS. ULRICH:  Yes, sir.

15          THE COURT:  Were there any other questions that you

16  might have?

17          MS. ULRICH:  That would be it.  Thank you, Your

18  Honor.

19          THE COURT:  Very well.  It will be necessary, Ms.

20  Williams, for you to sign the order setting these conditions of

21  release.  And Mrs. Williams, you must also sign that order.

22          (Complied.)

23          THE COURT:  Thank you, Mr. Neary.

24          COURTROOM DEPUTY:  You're welcome.

25          THE COURT:  As these proceedings draw to a close, a

22

1  couple of final matters that I need to address with Ms.

2  Williams and with the parties.  First, I'm going to direct that

3  the pretrial services report that has been prepared in this

4  matter be released to all counsel for their use in preparing

5  this case for further proceedings.

6         And I'm going to direct that counsel here share that

7  report with the authorities and defense counsel in the District

8  of Columbia with the understanding that the use of the report

9  is limited in the ways set forth in the report itself.  In

10  addition, Ms. Williams, I want to note for you a couple of

11  matters.

12         First, while I am entering this order setting

13  conditions of release, I want you and your mother to understand

14  that the U.S. Marshals will be obliged following this

15  proceeding to take you back to the facility where you were

16  housed last night.  They are required to do that because they

17  cannot remove someone from a facility and then just never bring

18  them back.

19         You will be processed out of that facility, and, Mrs.

20  Williams, the Marshals can provide you information regarding

21  what that process will be and how you can pick up your daughter

22  and then begin your responsibilities as a parent and a third

23  party custodian.

24         In addition, Ms. Williams, I want to note for you

25  that one of the reasons you are going home today is because in

23

1  a desperate time, in the glare of a public scrutiny, your

2  mother has stepped forward and promised to serve as a third

3  party custodian.  And you heard my questions to her, did you

4  not, ma'am?

5          THE DEFENDANT:  I did, Your Honor.

6          THE COURT:  And you heard that your mother has

7  promised that if there are violations of these conditions, she

8  will report them to me.  And she has made that promise

9  understanding that if she breaks that promise, she could be

10  criminally charged.  Do you understand that?

11          THE DEFENDANT:  I understand.

12          THE COURT:  Your mother is making an enormous leap of

13  faith on your behalf.  And you are the one person in this

14  courtroom who can make sure that your mother doesn't have to

15  choose between her love for you and her duty to this Court.  Do

16  you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do not put your mother in a position

19  where I learn that she was put to that choice.  Am I clear?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Very well.  Then I'd like to conclude

22  this proceeding with some final constitutional observations.

23  Ms. Williams, when we met on Tuesday, one of the first things I

24  did was advise you of your constitutional rights.  And then I

25  took steps to protect those rights by appointing aggressive,

24

1  effective counsel to represent you here.

2         That recital of rights wasn't just some hollow

3  invocation of abstract principles, it was affirmation of rights

4  guaranteed to you by the United States Constitution.  And it

5  strikes me that that guarantee says something extraordinary and

6  extraordinarily good about our constitution.

7         You are embraced by a presumption of innocence.  You

8  are entitled to the assistance of counsel.  You have a right to

9  remain silent.  All of these matters guaranteed to you by the

10  constitution, a constitution that protects the rights of those

11  who are accused of transgressing society's rules.  Some of the

12  most basic of those rules are set forth in our constitution.

13         And one of the fundamental pillars of that

14  constitution is the peaceful transition of power.  That

15  obligation that all citizens have to facilitate the peaceful

16  transfer of power is enshrined in the constitution.  It has

17  been honored by generations of Americans for 232 years.  It has

18  become so commonplace that we often think very little of it.

19  But as President Reagan said in his inaugural, that process is

20  a miracle.

21         The allegations that bring you before me involve

22  conduct that allegedly took place on January 6th of this year

23  as Congress was endeavoring to fill its constitutional

24  obligation to certify the will of the people and the votes of

25  the electoral college.  You are cloaked in a presumption of

1 innocence with respect to these matters, but the allegations

2 set forth in the complaint relate to conduct that was

3 antithetical to these constitutional values, conduct that

4 involved a riot, a mob that sought to replace constitutional

5 norms with the howling of a crowd.

6       We know now that the mob failed and the constitution

7 prevailed.  The constitution prevailed on January 6th of this

8 year because Congress, stepping over the wreckage of its

9 Capitol, met and confirmed with the Vice President of the

10 United States the vote of the electoral college, setting the

11 stage for the latest peaceful transition of power in this

12 country yesterday.

13       In the wake of those events on January 6th, it

14 strikes me that the constitution prevailed yet again.  In the

15 wake of those events, the men and women of federal law

16 enforcement, including Special Agent Strause and Assistant U.S.

17 Attorney Haugsby, fulfilled a duty that they had under the

18 constitution.

19       They have sworn an oath under the constitution to

20 protect and defend the constitution against all enemies,

21 foreign and domestic.  And in pursuit of that constitutional

22 obligation, a series of investigations have been launched into

23 the matters that took place on January 6th.  And those

24 investigations have brought us here today together.

25       It also occurs to me, Ms. Williams, in a very

1  personal and direct way, that the constitution has, is, and

2  will be prevailing in your case.  As I noted a few moments ago,

3  when we first met, I invoked the constitution on your behalf.

4            And I took steps to protect your constitutional

5  rights by appointing counsel for you.  Your counsel, fulfilling

6  the role that the constitution contemplated, has aggressively

7  represented your interests here today.  Wouldn't you agree, Ms.

8  Ulrich, that you have aggressively represented your client's

9  interests here today?

10            MS. ULRICH:  I spent the last two days doing a lot of

11  investigating, yes.

12            THE COURT:  And Mr. Haugsby, on behalf of the United

13  States, it is my view that over the past two days, you and your

14  colleagues here and elsewhere have endeavored to fulfill your

15  constitutional obligation to provide equal justice under the

16  law to insure the protection of individual rights and liberties

17  while insuring adherence to the rule of law.

18            So, Ms. Williams, in a very real and direct sense,

19  you are being released today because the constitution has

20  prevailed, because your counsel has fulfilled her

21  constitutional obligation, and because the United States is

22  also fulfilling its constitutional duty to strike hard blows,

23  but fair blows, in the pursuit of justice.

24            So I share that thought with you as you leave here

25  today, that your freedom, conditioned as it is by the orders

1  that I have entered, is a result of the prevailing of the

2  constitution.

3          And I'll leave you with this final thought, Ms.

4  Williams.  The constitution prevails here today, and the

5  constitution will always prevail in this country.  We'll stand

6  in recess.

7          COURTROOM DEPUTY:  Court is in recess.

8          (Proceeding adjourned at 10:00 a.m.)

9          *************************************

10          CERTIFICATION

11

12          I, Wendy C. Yinger, Federal Official Realtime Court

13  Reporter, in and for the United States District Court for the

14  Middle District of Pennsylvania, do hereby certify that

15  pursuant to Section 753, Title 28, United States Code, that the

16  foregoing is a true and correct transcript of the

17  stenographically reported proceedings held in the

18  above-entitled matter and that the transcript page format is in

19  conformance with the regulations of the Judicial Conference of

20  the United States.

21                    /s/ Wendy C. Yinger
                    Wendy C. Yinger, RMR, CRR
22                    U.S. Official Court Reporter
                    (717)440-1535
23

24      (The foregoing of this transcript does not apply to any
    reproduction of the same by any means unless under the direct
25  control and/or supervision of the certifying reporter.)